FERGUSON v. PROVIDENCE WASHINGTON INS. CO.

(District Court, S. D. New York.   October 2, 1903.)

1. MARINE INSURANCE—CONSTRUCTION OF POLICY—INSURANCE AGAINST LIABILITY OF TUG FOR COLLISION OR STRANDING.

A marine policy insured the owner of a tug against "loss and damage arising from or growing out of any accident caused by collision or stranding resulting from any cause whatever to any other vessel or vessels * * * for which said steamer or its owners may be legally liable." The tug found a scow adrift in the harbor in the night, and towed her to a slip, where she soon after sank at her mooring place. The master of the tug, although having knowledge of the sinking, took no steps to mark the place, and the scow was struck by other vessels entering the slip, and injured so that she became a total loss, and the tug was subjected to liability therefor. *Held*, that it was immaterial to the liability of the insurer under the policy whether the loss or damage to which the tug was subjected arose out of a towage or a salvage service, or that it was occasioned by the negligence of the master after the service had terminated, since the tug was adjudged liable therefor, and that the loss was within the terms of the policy.

In Admiralty.   Action on policy of marine insurance.

Wing, Putnam & Burlingham, for libelant.

James J. Macklin, for respondent.

HOLT, District Judge.   This is an action on a policy of marine insurance.   The Providence Washington Insurance Company, the respondent, by a policy dated May 19, 1894, insured William E. Ferguson, the libelant, the owner of the tug Governor, in the sum of $5,000, for one year, against "such loss or damage as the tug Governor may become legally liable for from any accident caused by collision or stranding."   The policy, in a later section, stated the contract more particularly as follows:

"This insurance is to fully indemnify the assured for loss and damage arising from or growing out of any accident caused by collision or stranding resulting from any cause whatever to any other vessel or vessels, * * * for which said steamer or its owners may be legally liable."

On a night in February, 1895, the tug Governor found the scow Peerless adrift in the harbor, and towed her to a slip between Seventeenth and Eighteenth streets, and moored her there.   The scow shortly after sunk at her mooring place, and the master of the Governor,

knowing that she was sunk, placed no buoy over her, and did nothing to give any notice to other vessels that she was sunk there. Thereafter other vessels coming into the slip ran upon the sunken scow, and injured her so badly that she was a total loss. The owner of the scow sued the tug Governor in this court, and recovered judgment against her for damages on the ground that the master of the Governor was bound, after having towed her to the place where she sunk, to take reasonable measures to give notice of her situation, so as to prevent her from being injured by other vessels while submerged, until her owners could have notice and take proper steps to save her. Serviss v. Ferguson, 28 C. C. A. 327, 84 Fed. 202. The libelant, as owner of the tug Governor, having paid the judgment, brings this suit for reimbursement.

The substantial defense urged in this case is that this was an insurance against collisions or accidents occurring while engaged in the business of towage; that the service rendered by the tug to the scow was a salvage service; that the service, whether towage or salvage, terminated before the collision; and that the negligence of the master of the tug, for which the tug was held liable, was negligence of the master after the tug's service had ended. The application for this policy of insurance described the policy wanted as one covering a tower's liability, and the policy confined the insurance to the tug while engaged in the waters of New York Harbor and its vicinity; but the policy issued is the instrument which fixes the terms of the contract, and there is nothing in the policy which confines the indemnity to a collision or accident occurring while the tug was engaged in strictly towage service. Towage service is often distinguished from salvage service by the fact that the former is aid rendered in the movement of vessels not in distress, while salvage service is confined to aid rendered to those in distress; but I think that no such distinction was intended by the parties to the contract contained in the policy. It was the intention of Ferguson, the owner of the tug, to obtain, and of the insurance company to confer, by insurance, indemnity against any liability to which the tug might be subjected by reason of any collison or accident to any other vessel, and I do not think the liability is affected at all by the question whether the tug was engaged in towage or salvage service. If there were any ambiguity in the policy, it would be the duty of the court, in construing it, to adopt the interpretation most favorable to the assured. Indemnity Co. v. Dorgan, 7 C. C. A. 581, 58 Fed. 956; National Bank v. Ins. Co., 95 U. S. 673, 24 L. Ed. 563; Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408; American S. S. Co. v. Indemnity Co. (D. C.) 108 Fed. 421. But I do not see any ambiguity in this policy. It insures against "all loss and damage arising from or growing out of any accident caused by collision or stranding resulting from any cause whatever to any other vessel." Nor do I think that there is anything in the point that the master's negligence was his individual negligence, after the tug's service was finished. The fact that the court held the tug liable for the master's negligence in not placing a buoy over the sunken scow shows that the court considered that the negligence was negligence of the master for which the tug was liable. A tugboat's responsibility

does not end with the actual towing. There are various cases holding that a tug is responsible for injuries to a tow after it has been left by the tug, if left in an unsafe place. Connolly v. Ross (D. C.) 11 Fed. 342; Cokeley v. The Snap (D. C.) 24 Fed. 504; The Thomas Purcell, Jr., 34 C. C. A. 419, 92 Fed. 406.

My conclusion is that there should be a decree for the libelant for the amount demanded in the libel, unless the respondent desires to contest the amount due, in which case the usual reference will be ordered.